IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHELLE P.                            *
                                       *
         v.                            *    Civil Case No. PX-18-2008
                                       *
COMMISSIONER, SOCIAL SECURITY          *
                                       *
                            *************

**REPORT AND RECOMMENDATIONS**

Pursuant to Standing Order 2014-01, the above-referenced case has been referred to me for review of the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). Plaintiff, Michelle P., who is appearing *pro se,* petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF 1. Plaintiff did not file a dispositive motion, but I have considered the SSA's Motion for Summary Judgment, ECF 14.[1] I have also considered the arguments made by Plaintiff following her first administrative hearing, and by Plaintiff's former counsel at her second administrative hearing. Tr. 447-48, 1810-11.

This Court must uphold the SSA's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons set forth below, I recommend that the SSA's motion be denied, the decision of the SSA be reversed in part, and the case be remanded to the SSA for further consideration pursuant to sentence four of 42 U.S.C.

---

[1] The Clerk mailed a Rule 12/56 letter to Plaintiff on January 18, 2019, advising her of the potential consequences of failing to respond to the SSA's motion. ECF 14. Plaintiff did not respond.

§ 405(g). In so recommending, I express no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct.

Plaintiff filed her applications for DIB and SSI on December 28, 2012, alleging a disability onset date of July 1, 2011. Tr. 317-27. Her applications were denied initially and on reconsideration. Tr. 204-09, 212-17. A hearing was held on September 10, 2015, before an Administrative Law Judge ("ALJ"). Tr. 1834-51. After the hearing, the ALJ issued an opinion denying benefits. Tr. 182-92. The Appeals Council ("AC") granted Plaintiff's request for review, vacated the ALJ decision, and remanded the case back to the ALJ. Tr. 202-203. A second ALJ hearing, at which Plaintiff was represented by counsel, was held on March 3, 2017. Tr. 1804-1833. After the hearing, the ALJ issued another opinion denying benefits. Tr. 79-100. This time, the AC denied review, making the ALJ's second decision the final, reviewable decision of the SSA. Tr. 1-6.

Finding that Plaintiff presented evidence of a mental impairment as of October 29, 2013, the ALJ divided his analysis of Plaintiff's claim before and after that date. The ALJ found that, from Plaintiff's alleged onset date through October 29, 2013, Plaintiff suffered from the severe impairments of:

> obesity, diabetes mellitus, allergic rhinitis, allergic sinusitis, hypertension with retinopathy, obstructive sleep apnea, bilateral carpal tunnel syndrome with wrist tendonitis status-post right carpal tunnel release in July 2011, neuropathy; right humerus enchondroma, possible low-grade chondrosarcoma, tendonitis, bursitis, status-post curettage and bone grafting in May 2013, new injury and possible fracture in July 2013; thyroid nodules, hypothyroidism, nontoxic multinodular goiter with compressive symptoms, status-post thyroidectomy in March 2014; gastroesophageal reflux disease, LERD, esophagitis, duodenitis; lumbar facet syndrome, degenerative disc disease, degenerative joint disease; iron deficiency anemia, left knee degenerative joint disease; left shoulder bursitis, tenosynovitis, tendonitis; asthma; congestive heart failure/diastolic heart failure, diastolic dysfunction, angina pectoris, coronary artery disease, hypertensive heart disease, and palpitations; and cervical spine degenerative disc disease.

Tr. 83. Despite these impairments, the ALJ determined that during that time period Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant could occasionally lift and/or carry twenty pounds, and frequently lift and/or carry ten pounds, stand and/or walk about six hours in an eight-hour workday, sit for a total of six hours in an eight-hour workday, frequently handle, finger, and feel bilaterally, occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, and never climb ladders, ropes, and scaffolds. The claimant must avoid concentrated exposure to extreme cold, fumes, odors, dusts, gases, poor ventilation, etc., and hazards (machinery, heights, etc.).

Tr. 87. During the time period from October 29, 2013, through the date of the decision, the ALJ found that Plaintiff additionally suffered from the severe impairment of "a mental impairment variously diagnosed as anxiety, anxiety disorder, depression, major depressive disorder, anxiety disorder, NOS, anxiety state, and moderate to severe major depressive disorder." Tr. 83-84. The ALJ found that after October 29, 2013, Plaintiff retained the above RFC with the additional limitations that Plaintiff:

> required the ability to periodically alternate between sitting and standing at irregular intervals, but with the understanding that she would still be capable of remaining on task sufficiently to maintain satisfactory productivity levels. She is further limited to performing simple, one to four step, routine, repetitive tasks in a low stress work environment, defined as requiring only occasional decision making and occasional changes in the work setting, where there would only be occasional contact with co-workers and supervisors, and no contact with the general public, and which would not require a fast pace or production quotas such as would customarily be found on an assembly line.

Tr. 93. After considering the testimony of a vocational expert ("VE"), the ALJ determined that through October 28, 2013, Plaintiff could perform her past relevant work, and that after October 28, 2013, she could perform other jobs existing in significant numbers in the national economy. Tr. 96-99. Accordingly, the ALJ concluded that Plaintiff was not disabled. Tr. 99-100.

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the SSA's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the ALJ's findings). For the reasons described below, while substantial evidence supports some portions of the ALJ's decision, the analysis is otherwise deficient. Accordingly, I recommend remand.

At step one, the ALJ found that Plaintiff engaged in substantial gainful activity from January 1, 2013, through December 31, 2013, but that her other work during the relevant time period did not amount to substantial gainful activity. Tr. 82-83. At step two, the ALJ found the severe impairments listed above, and also found a number of other impairments were nonsevere. Tr. 83-84. At step three, the ALJ determined that Plaintiff's impairments did not meet, or medically equal, the criteria of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (2017). Tr. 84-87. The ALJ specifically considered Listings 1.02, 1.04, 3.02, 3.03, 4.04, 11.14, 12.04, and 12.06. *Id.* The ALJ reviewed the criteria of each listing, and discussed which criteria were absent from the medical evidence. *Id.* In determining Plaintiff's RFC assessment for use in steps four and five, the ALJ summarized Plaintiff's allegations from her testimony and function reports regarding her inability to perform work activity. Tr. 88-89. The ALJ then engaged in an extensive review of the medical records. Tr. 89-96.

A significant flaw in the decision lies in the ALJ's consideration of Plaintiff's physical limitations caused by her shoulder impairments. The ALJ discussed Plaintiff's left shoulder history, including "a lot of guarding when trying to move her left shoulder . . . [with] difficulty

reaching behind her head or behind her back," Tr. 90, and an MRI showing bursitis/tendonitis, Tr. 91. The ALJ concluded that discussion with the claim that "claimant's reports of shoulder pain and dysfunction area [sic] treated conservatively, including rest, injections, and simple anti-inflammatory." Tr. 91. The ALJ then opined that Plaintiff's various impairments, including her shoulder pain, "warrant manipulative limitations." Tr. 91. However, he immediately followed that conclusion with a discussion of Plaintiff's right shoulder treatment history, explaining that "[t]he objective medical examinations in the record show reduced range of motion affecting the right upper extremity . . . and her physical examinations show more than a minimal degree of restriction in active and passive range of motion affecting her upper right extremity." Tr. 91-92.

Although it is unclear from the ALJ's opinion if he believed Plaintiff required manipulative limitations for one or both of her shoulders, the ALJ failed to include limitations in the RFC that would account for her limited range of motion, such as reaching limitations, in *either* shoulder. Tr. 87, 93. The State agency medical consultants at the initial and reconsideration levels, whose opinions the ALJ found "generally persuasive," Tr. 92-93, both indicated that Plaintiff had limitations in reaching. Tr. 131, 152. Indeed, in his first decision in this case, the ALJ himself indicated in Plaintiff's RFC that she "must avoid overhead reaching." Tr. 186. Of course, the ALJ was not bound by the opinions of the State consultants or his previous decision, but the ALJ offered no explanation for deviating from those prior findings.

The function of this Court is not to review Plaintiff's claims *de novo* or to reweigh the evidence of record. *See Smith v. Schweiker,* 795 F.2d 343, 345 (4th Cir. 1986) (citing 42 U.S.C. § 405(g) and *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972)). Rather, this Court is to determine whether, upon review of the whole record, the SSA's decision is supported by substantial evidence and a proper application of the law. *See* 42 U.S.C. § 405(g); *see also Hays*

*v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Considering all the evidence the ALJ discussed that would support limitations in reaching, and without any explanation from the ALJ for the omission of those limitations, the ALJ's RFC analysis cannot be said to be supported by substantial evidence.

Furthermore, later in the decision, the ALJ "judicially notice[d] the fact that the [representative jobs offered by the VE] require only frequent reaching, handling, and fingering." Tr. 98. If this case is remanded, the ALJ should be mindful of the Fourth Circuit's decision in *Pearson v. Colvin*, 810 F.3d 204 (4th Cir. 2015). In *Pearson*, the Fourth Circuit held that an "apparent conflict" existed where the claimant was limited to occasional overhead reaching and the representative jobs offered by the VE required frequent reaching. *Id.* at 210-11. Accordingly, if on remand the ALJ were to find the claimant has limitations in reaching, he should make sure to fulfill his duty to elicit a reasonable explanation for any apparent conflict between the VE testimony and the *Dictionary of Occupational Titles*. *See id.*; SSR 00-4p, 2000 WL 1898704 (S.S.A. Dec. 4, 2000).

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that:

1. the Court DENY Defendant's Motion for Summary Judgment, ECF 14;

2. the Court REVERSE IN PART the SSA's decision under sentence four of 42 U.S.C. § 405(g); and

3. the Court order the Clerk to REMAND the case to the SSA for further proceedings and to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b)(2) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Dated: March 04, 2019                                         /s/
                                                              Stephanie A. Gallagher
                                                              United States Magistrate Judge